UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Matthew D. Bobola

   v.                                 Case No. 15-cv-039-SM

William Wrenn, Helen Hanks
Bernadette Campbell, Celia
Englander, Lisa Savage, and
Christopher Kench

**REPORT AND RECOMMENDATION**

Matthew Bobola, appearing pro se, is currently being incarcerated by the New Hampshire Department of Corrections ("DOC") at the New Hampshire State Prison ("NHSP"). Under the aegis of 42 U.S.C. § 1983, Bobola asserts that he has been denied adequate medical care, in violation of the Eighth Amendment to the United States Constitution. He also asserts a claim for medical negligence under New Hampshire state law. Before this magistrate judge for a report and recommendation are two motions for summary judgment, one filed by all six defendants and one filed by plaintiff. Both motions have been opposed. For the reasons that follow, defendants' motion for summary judgment should be granted, and plaintiff's motion should be denied.

**Summary Judgment Standard**

"Summary judgment is appropriate when the record shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Walker v. President & Fellows of Harvard Coll., 840 F.3d 57, 61 (1st Cir. 2016) (quoting Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011); citing Fed. R. Civ. P. 56(a)). "A genuine issue is one that can 'be resolved in favor of either party' and a material fact is one which 'has the potential of affecting the outcome of the case.'" Id. (quoting Gerald v. Univ. of P.R., 707 F.3d 7, 16 (1st Cir. 2013); citing Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25, (1st Cir. 2011)).

When a court considers a motion for summary judgment, "[t]he evidence . . . must be viewed in the light most favorable to the nonmoving party . . . and all reasonable inferences must be taken in that party's favor." Harris v. Scarcelli (In re Oak Knoll Assocs., L.P.), 835 F.3d 24, 29 (1st Cir. 2016) (citing Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir. 1994)). To defeat summary judgment, "[t]he non-moving party . . . must 'produc[e] specific facts sufficient to deflect the swing of the summary judgment scythe.'" Xiaoyan Tang v. Citizens Bank,

N.A., 821 F.3d 206, 215 (1st Cir. 2016) (quoting Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003)).

When presented with cross motions for summary judgment, the court must "view each motion separately and draw all reasonable inferences in favor of the respective non-moving party." Pac. Indem. Co. v. Deming, 828 F.3d 19, 23 (1st Cir. 2016) (quoting Roman Catholic Bishop v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013)). That is, "[c]ross motions simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (quoting Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004)).

## Background

The court begins by describing, briefly, the sources of the facts recited below. Defendants' motion is supported by facts, cognizable at summary judgment, that appear in the attachments to: (1) their objection to plaintiff's motion for a preliminary injunction; and (2) their reply to plaintiff's objection to their motion for summary judgment. As for plaintiff, the memorandum of law he submitted in support of his motion for summary judgment does not include the "short and concise

statement of material facts, supported by appropriate record citations" required by Local Rule 56.1(a), and he supports his objection to defendants' summary-judgment motion with the same memorandum he submitted in support of his own motion.  However, the court will consider three documents in the record that plaintiff has verified pursuant to 28 U.S.C. § 1746.[1]  See Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials [i.e., those cited in a party's memorandum of law], but it may consider other materials in the record.").  Those documents include: (1) an affidavit dated September 2, 2014, that Bobola had submitted to the Warden of the NHSP and that he subsequently attached to his complaint; (2) a filing titled "Declaration: Temporary restraining Order Preliminary Injunction"; and (3) a document titled "Memorandum of Law in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction."  Unless otherwise indicated, the facts recited in this section are undisputed.

Bobola was booked into the NHSP in August of 2013.  See R.

---

[1] When a pleading has been verified in accordance with 28 U.S.C. § 1746, any facts stated therein may be used to support or oppose a motion for summary judgment.  See Banks v. Hall, No. 09-cv-326-JD, 2010 WL 3430846, at *2 (D.N.H. Aug. 20, 2010).

& R. (doc. no. 36 at 2, n.2).[2]  That same month, he "reported to the [NHSP] infirmary complaining that he had twisted his right knee getting out of his lower bunk the night before."  Defs.' Reply Mem., Ex. C, Campbell Decl. (doc. no. 45-1, ¶ 3).  He was given Ace bandage wraps, and several days later, an advanced nurse practitioner in the infirmary referred Bobola to "a physical therapist to evaluate his right knee for a possible brace."  Id.  Bobola next complained of knee pain about two months later.  See id. ¶ 4.  In response, Lisa Savage, an advanced practice registered nurse at the NHSP, gave him an Ace bandage wrap and encouraged him to make an appointment with NHSP physical therapist Bernadette Campbell.  See id.  There is no record of his having done so, but during two visits to the infirmary in late November, Bobola asked for a renewal of a prescription for ibuprofen and complained of pain in his right knee.  See id. ¶ 5.  He was then scheduled for an appointment with Campbell, which he did not attend.  See id. ¶ 6.

In early January of 2014, "Bobola reported to the infirmary, stating that he had twisted his right knee twice in

---

[2] Bernadette Campbell has stated, in a declaration, that Bobola arrived at the NHSP in August of 2012, see Defs.' Reply Mem., Ex. C, Campbell Decl. (doc. no. 45-1, ¶ 3), but the exact date of Bobola's arrival at the NHSP is immaterial to any matter addressed in this report and recommendation.

the [previous] 24 hours." Campbell Decl. ¶ 7. He was given ibuprofen, and was scheduled for an appointment with Campbell. See id. She saw him several days later, ordered x-rays, ordered a brace for his left wrist, and ordered a neoprene sleeve brace for his right knee. See id. Several days after that, Bobola's wrist and knee were both x-rayed. See id. ¶ 8. According to the resulting radiology report, the x-rays showed: (1) an "[o]ld appearing fracture of the scaphoid"[3] and "[m]ild degenerative joint disease of the left wrist, but no acute fracture," Campbell Decl., Attach. C-2 (doc. no. 45-3 at 1); and (2) a "[n]ormal right knee," id. at 2.

Later in January, Bobola asked Campbell for a cortisone shot for his wrist, and she scheduled him for an appointment. See Campbell Decl. ¶ 9. He also went to the infirmary complaining of pain in his wrist. See id. As a result, he was referred for a consultation with an outside orthopedist, but did not show up for that appointment, or for a second appointment that was scheduled after he missed the first one. See id. Bobola's failure to show up for either appointment is documented by a contemporaneous DOC medical record. See Defs.' Obj.,

---

[3] The scaphoid bone is "the largest [bone] of the proximal row of the carpus on the lateral (radial) side." Stedman's Medical Dictionary 242 (28th ed. 2006).

6

Domenici Decl., Attach. A-2 (doc. no. 34-3).

In late April of 2014, Bobola submitted an Inmate Request Slip ("IRS") to Campbell, asking to see her about his right knee. See Campbell Decl. ¶ 10. She scheduled an appointment, and when Bobola complained that he was bothered by the fabric of his knee sleeve, she provided him with Ace bandage wraps. See id. ¶ 11. Several weeks later, Bobola was admitted to the prison's secure psychiatric unit, and as a result, he was separated from his knee sleeve and Ace bandage wraps. See id. ¶ 12. When Bobola complained to Savage about knee pain, she ordered the return of knee sleeve. See id. When Campbell returned the sleeve to Bobola, on July 30, he complained about it, and demanded a hinged knee brace, from outside the prison. See id. ¶ 13. Campbell told him that she didn't believe that kind of brace was medically necessary, and also suggested that he lose weight, to decrease stress on his knee. See id.

Two days before Campbell returned Bobola's knee sleeve to him, he had filed an IRS with Savage. In it, asked for a new knee brace and a cortisone shot for his wrist. He also asked Savage to review his medical records, including records of treatment he had received before his incarceration. In her response, Savage indicated that had reviewed Bobola's medical

7

records, reaffirmed the decision to provide him with a knee sleeve rather than the brace he wanted, and stated that his "knee issue [had] been addressed through [physical therapy]" and that the January, 2014, "X-ray of [his] knee was normal." Compl. (doc. no. 1 at 7).

The day after he filed his IRS with Savage, Bobola filed an IRS with Dr. Celia Englander, who worked as a physician at the NHSP.  From Dr. Englander he requested: (1) a hinged knee brace; (2) a change in his pain medication; and (3) "an injection of Dexamethasome mixed with Lidocaine to be injected in the flexor carpi radiating tendon sheath," Compl. (doc. no. 1 at 9-10). Dr. Englander responded:

> I note that you have already submitted IRS's to Ms. Savage, who has already seen you.
>
> I reviewed your record and you were scheduled for ortho 3/20/14 and were a No Show for the 2nd time despite 3 calls to you.  This was for a [illegible] injection to [your] wrist.
>
> I will be happy to change your Motrin to naproxen.
>
> By the way, the hinged knee brace was prescribed at a time when you were actively working.

Id.

The day after he filed his IRS with Dr. Englander, Bobola filed another IRS directed simply to "medical."  In it, he asked

medical to reissue him a "medical blanket" he could use to elevate his knee while lying down, and to assist him when he needed to ice his knee. His request was denied, with the following notation: "Not a medical need." Compl. (doc. no. 1 at 11).

After he pursued grievances up through the Commissioner of the DOC, Bobola filed this action, in January of 2015. As noted, he asserts a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, and a state-law claim for medical negligence.

In his complaint, Bobola acknowledged that the hinged knee brace he wore before his incarceration "is not an option at the prison," Compl. (doc. no. 1, ¶ 9), presumably because it contains metal components. In an affidavit he attached to his complaint, Bobola stated:

> [M]edical staff have claimed that I was a NO SHOW for (two) appointments, when there is absolutely NO PROOF of that. I have NEVER received an appointment slip for which I did not attend the appointment, and if I had, I would have been given a DISCIPLINARY REPORT and charged for the missed appointment. Claims that medical called my unit to have me sent over are equally MERITLESS, because in a prison, it is INCONCEIVEABLE that staff would be unable to locate an inmate or order him to go to medical.

Compl. (doc. no. 1 at 6).

Starting in March of 2015, Bobola received at least four

9

orthopedic consultations with outside medical professionals; was given a cortisone injection in his left wrist; and received a magnetic resonance imaging scan ("MRI") of his right knee that revealed a torn anterior cruciate ligament ("ACL"), a torn posterior cruciate ligament ("PCL"), and a torn meniscus.  At one of Bobola's consultations, Dr. Scott Devanny determined that Bobola did not need a knee brace or surgery for his ACL or his PCL, but he did recommend an "arthroscopic partial medial meniscectomy," Pl.'s Obj., Attach. A-8 (doc. no. 34-9 at 1), to repair Bobola's torn meniscus.  Bobola indicated that he wanted to have the surgery, which Dr. Englander then scheduled.  In the meantime, Bobola changed his mind and decided that rather than surgery, he wanted to get another opinion on his orthopedic issues.  Consequently, when Bobola was summoned for transport on the day of his scheduled surgery, he refused to go.

On the same day that he refused to be taken in for surgery, Bobola filed a motion for a temporary restraining order and a preliminary injunction.  His motion focused almost exclusively on treatment he had received after he filed this action.  In that motion, he sought several forms of relief, including "a second opinion by a seasoned Orthopaedist, of the Court's choosing."  Pl.'s Mem. of Law (doc. no. 31-1 at 18) (emphasis

omitted). In an order dated March 4, 2016, the district judge approved this magistrate judge's recommendation to deny plaintiff's motion for a preliminary injunction.

## Discussion

On July 22, 2016, three days before the deadline for doing so, all six defendants moved for summary judgment. Their memorandum of law includes a statement of undisputed material facts that "essentially duplicates the statement of facts submitted in [their] objection to Bobola's motion for [a] preliminary injunction." Defs.' Mem. of Law (doc. no. 39-1 at 1, n.1). That statement of facts, in turn, focusses almost exclusively on events that took place after March 12, 2015, i.e., after Bobola filed this suit. In response to defendants' motion for summary judgment, Bobola filed his own motion for summary judgment, on September 8. In it, he agreed that the facts recited in defendants' memorandum of law were undisputed but asserted that those facts "are not and should not be considered as factually material to this case due to the time [in] which the[y] occurred." Pl.'s Mem. of Law (doc. no. 42-1 at 3).

Defendants object to plaintiff's summary-judgment motion on

multiple grounds, including untimeliness.  While plaintiff objected to defendants' motion for summary judgment before the applicable deadline, objecting to an opposing party's motion for summary judgment is not the same thing as affirmatively moving for summary judgment.  Thus, defendants are correct in their argument that plaintiff's motion for summary judgment is untimely, as it was filed more than a month after the deadline established in the court's order of July 20, 2016.  Accordingly, plaintiff's summary-judgment motion should be denied.  However, for reasons that will become apparent in the discussion that follows, even if plaintiff had filed his motion for summary judgment on time, denial would still be the appropriate disposition.  In the balance of this section, the court examines each of plaintiff's two claims.

**A.   Eighth Amendment**

Plaintiff's first claim is that defendants violated the Eighth Amendment by denying him adequate medical care for his right knee and his left wrist.  Defendants argue that, for the reasons identified in the court's report and recommendation on plaintiff's motion for a preliminary injunction, no rational trier of fact could find, from the undisputed facts, that

plaintiff received constitutionally inadequate medical care from them. The court agrees.

The Eighth Amendment to the United States Constitution guarantees that prisoners shall not be subjected to cruel and unusual punishments. "Prison officials . . . violate the Eighth and Fourteenth Amendments' prohibition against 'cruel and unusual' punishments when they exhibit 'deliberate indifference' to a detainee's serious medical needs." Perry v. Roy, 782 F.3d 73, 78 (1st Cir. 2015) (citing Feeney v. Corr. Med. Servs., 464 F.3d 158, 163 (1st Cir. 2006); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

"[T]o prove an Eighth Amendment violation, a prisoner must satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (citing Estelle, 429 U.S. at 106; Sires v. Berman, 834 F.2d 9, 12 (1st Cir. 1987)).

For the purposes of summary judgment, defendants do not dispute that the condition of Bobola's right knee and the condition of his left wrist created serious medical needs sufficient to satisfy the objective prong an Eighth Amendment

claim. Plaintiff's claim, however, founders on the subjective prong.

To satisfy the subjective prong and show deliberate indifference, which has been described as a "culpable state of mind," Perry, 782 F.3d at 78, and "a narrow band of conduct," Kosilek, 774 F.3d at 83 (citation omitted), a prisoner must generally produce "evidence that the absence or inadequacy of treatment is intentional," Perry, 782 F.3d at 79 (citing Estelle, 429 U.SW. at 105; Watson v. Caton, 984 F.3d 537, 540 (1st Cir. 1993)). Or, "deliberate indifference may . . . be exhibited by a wanton disregard [of] a prisoner's needs, [when] such disregard [is] akin to criminal recklessness, requiring consciousness of impending harm, easily preventable." Kosilek, 774 F.3d at 83 (quoting Battista v. Clarke, 645 F.3d 449, 453 (1st Cir. 2011); Watson, 984 F.2d at 540) (internal quotation marks omitted). In any event, a prisoner must prove more than "an inadvertent failure to provide adequate medical care," Estelle, 429 U.S. at 105, or a mere "disagreement[] between [himself] and [his] doctors about the proper course of [his] medical treatment," Kosilek, 774 F.3d at 83 (quoting Watson, 984 F.2d at 540). Regarding the latter, the court notes that it is well established that the Eighth Amendment "does not impose upon

14

prison administrators a duty to provide care . . . of the prisoner's choosing." Id. at 82 (citing Ferranti v. Moran, 618 F.2d 888, 891 (1st Cir. 1980)).

At the time when plaintiff filed this action, medical personnel at the NHSP had, at the very least: (1) given him Ace bandage wraps for his knee (several times); (2) referred him to physical therapy (several times); (3) given him various medications; (4) taken x-rays of his knee and wrist; (5) given him a brace for his wrist and a sleeve for his knee; (6) referred him for a consultation with an outside orthopedist (twice); (7) reviewed his medical records, at his request; (8) replaced one of his medications when he complained about its side effects; and (9) provided substantive responses to questions he asked concerning the treatment he was being provided.[4]  Based upon the foregoing, which is undisputed, the court concludes that plaintiff has failed to produce evidence from which a reasonable trier of fact could find that defendants denied him treatment in order to punish him, see Perry, 782 F.3d at 79 (citing Watson, 984 F.2d at 540), or exhibited a wanton

---

[4] And, as plaintiff acknowledges, after he filed this action, defendants provided him with a cortisone injection, sent him to consultations with outside health-care providers, and scheduled surgery for his torn meniscus.

disregard for his medical needs, see Kosilek, 774 F.3d at 83. That is, plaintiff has not carried his burden of producing evidence that would support a reasonable determination that the medical treatment he received from the NHSP was "repugnant to the conscience of mankind," Estelle, 429 U.S. at 106, or "offend[ed] evolving standards of decency in violation of the Eighth Amendment," id. (internal quotation marks omitted). Accordingly, defendants are entitled to judgment as a matter of law on plaintiff's Eighth Amendment claim.

Before turning to plaintiff's second claim, there is one additional issue to address. Defendants have produced evidence that on two occasions in early 2014, Bobola was scheduled for consultations with an outside orthopedist, but failed to show up for either appointment. Those missed appointments, in turn, were mentioned in various responses Bobola received from prison officials when he used the DOC/NHSP grievance process to complain about his medical care. Plaintiff has countered defendants' evidence by producing evidence that he did not receive an appointment slip for either of the consultations defendants say he missed. See Compl. (doc. no. 1 at 6). What plaintiff has not produced, however, is any evidence that would create a genuine issue of fact, see Walker, 840 F.3d at 61,

regarding whether defendants scheduled those consultations in the first instance. Thus, it is undisputed that they responded to Bobola's serious medical need by arranging for him to see an orthopedist. Even when the court credits plaintiff's evidence that he was supposed to get appointment slips, but did not, that evidence, without more, establishes only administrative negligence, which is insufficient to satisfy the subjective prong of a claim for deliberate indifference to a serious medical need. See Estelle, 429 U.S. at 105.

**B.  Medical Negligence**

Plaintiff's second claim is that even if defendants' treatment of his knee and wrist did not violate the Eighth Amendment, it amounted to medical negligence under New Hampshire state law. Defendants argue that they are entitled to judgment as a matter of law on plaintiff's medical-negligence claim because he has not disclosed an expert witness. Defendants are correct.

Under New Hampshire law, a plaintiff claiming medical injury must produce expert testimony to establish: (1) the applicable standard of care; (2) the defendant's failure to meet that standard of care; and (3) a causal relationship between the defendant's sub-standard care and the plaintiff's injury. See

N.H. Rev. Stat. Ann. § 507-E:2, I.  When a plaintiff claiming medical negligence fails to proffer an expert, the defendant is entitled to summary judgment.  See Smith v. HCA Health Servs. of N.H., Inc., 159 N.H. 158, 163 (2009); see also Griffin v. Hillsborough Cty. Dep't of Corr., No. 13-cv-539-SM, 2015 WL 3970291, at *1 (D.N.H. June 30, 2015).  Here, plaintiff has not disclosed an expert witness.  Accordingly, defendants are entitled to judgment as a matter of law on his claim for medical negligence.

## Conclusion

For the reasons described above, defendants' motion for summary judgment, doc. no. 39, should be granted; plaintiff's motion for summary judgment, doc. no. 42, should be denied; and the clerk of the court should be directed to enter judgment in favor of defendants and close this case.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file an objection within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617

F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

                                                Andrea K. Johnstone
                                                United States Magistrate Judge

December 2, 2016

cc:   Matthew D. Bobola, pro se
      Kenneth A. Sansone, Esq.